

FILED

AUG - 9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re                                )  Case No. 09-40851-A-7
                                     )
JILL and KELVIN POWELL,              )
                                     )
                                     )
         Debtors.                    )
                                     )
_____        )
                                     )
DAVID KENNER,                        )  Adv. No. 09-2782
                                     )
         Plaintiff,                  )
                                     )
vs.                                  )
                                     )
KELVIN LAMAR POWELL,                 )  Date: June 29, 2010
                                     )  Time: 1:30 p.m.
                                     )
         Defendant.                  )
                                     )
_____        )

**MEMORANDUM**

In this adversary proceeding, plaintiff David Kenner seeks to have an obligation excepted from defendant Kelvin Lamar Powell's chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

Around June 2006, the defendant entered into a partnership with Katanya Maina and Kelvin Powell, the defendant's nephew, to develop and operate an "event center" in leased premises located at 727 J Street, Sacramento, California.  Once these premises



were remodeled, the partnership intended to rent out this space to the public for such things as receptions, art shows, and parties.  To make the premises suitable for such events, the partnership needed to install a kitchen.

To that end, Ms. Maina located commercial kitchen equipment that would be suitable for the partnership's needs.  However, because the partners did not have the financial wherewithal or the necessary credit, the partnership was unable to purchase or finance the acquisition of the equipment.  Ms. Maina therefore approached the plaintiff and asked him to sign a two-year lease for the equipment.

In exchange for the plaintiff signing the lease, Ms. Maina represented to him that his name would be removed from the lease in six months, that he would receive 1% of the net profits of the partnership for two years, and at the end of the two years, the partnership would purchase back the 1% profit participation interest for $5,100.  These terms were reduced to a writing dated July 23, 2007.

The plaintiff negotiated these terms with Ms. Maina.  While the plaintiff met the defendant before the July 23 agreement was signed, their meeting was happenstance during an inspection of the premises.  They did not discuss the lease or the terms of the plaintiff's participation.  Even though the terms were negotiated only with Ms. Maina, the plaintiff required all three partners to sign the July 23 agreement.  However, the defendant did not sign in the presence of the plaintiff.

Thereafter, on August 6, 2007, the plaintiff signed a two-year lease with TimePayment Corp., a member of the Cardiff

1  Financial Group, thereby permitting the partnership to acquire
2  kitchen equipment from Cullincini Inc.   The lease required 24
3  monthly payments of $1,468.44.

4      At the insistence of the plaintiff, the partnership set up a
5  partially funded bank account from which the lease payments could
6  be drawn.   From the account, the partnership paid the monthly
7  rental for approximately four to six months, then the payments
8  came to a halt.[1]   They came to a halt because the event center
9  never opened due to the partnership's inability to conform the
10 leased premises to the requirements of the Americans with
11 Disabilities Act.   The event center never earned a dime.

12     Neither the defendant nor any of the other partners took any
13 steps to have the lessor remove the plaintiff's name from the
14 lease.   Not only has the lessor refused to do so, it has sued the
15 plaintiff in state court and is demanding the remaining lease
16 payments from him.

17     The plaintiff asserts that the complete absence of any
18 effort to have the lessor release the plaintiff demonstrates that
19 the defendant and the other partners never intended to keep their
20 promise.   This is a species of "promissory fraud" that cannot be
21 discharged in bankruptcy.   See e.g., FCC Nat'l Bank/First Card v.
22 Friend (In re Friend), 156 B.R. 257 (Bankr. W.D. Mo. 1993); In re
23 Barnette, 281 B.R. 869 (Bankr. W.D. Pa. 2002) (inferring
24 fraudulent intent at the inception of the contract from the fact

25

26
      ─────────────────────
27 [1] The complaint demands payment of $33,102.57 from the
   defendant.   This corresponds to approximately 20 months of rental
   payments.   Therefore, while there was some trial evidence that
28 monthly payments were made for six months, the demand of the
   complaint suggests only four payments were made.

-3-

that the debtor failed to take any steps to perform a contract).

There is a problem with the plaintiff's theory.

The defendant denies that he signed the July 23 written agreement.  That is, he denies promising anything to the plaintiff.

There is corroboration for the defendant's claim that his signature on the agreement was forged.

- The plaintiff admits that he negotiated his deal with Ms. Maina and not the defendant.  Hence, the defendant made no verbal promises to the plaintiff.

- The plaintiff did not witness the defendant's signature on the agreement.  Ms. Maina delivered the July 23 agreement to the plaintiff with the defendant's signature already on it.

- The defendant's signature is not notarized.  While notarization was unnecessary to bind the defendant to the contract, had his signature been notarized the notary could have verified the signer's identity.

- Finally, there is a problem with the signatures on the lease and that problem suggests that Ms. Maina may have signed the defendant's name to the July 23 agreement.  During closing argument, counsel for the defendant admitted that the lessor was suing only the plaintiff and not Ms. Maina in state court.  Apparently, the lease given to the lessor bears only the plaintiff's signature.  While Ms. Maina's signature is on the copy of the lease she gave to the plaintiff, the copy Ms. Maina delivered to the lessor bore only the plaintiff's signature.  It appears then that Ms. Maina deceived the plaintiff into believing she was signing the lease with him.

Given this deception, and given that Ms. Maina was the person who negotiated and delivered the signed July 23 agreement to the plaintiff, the court infers that she was the person signing the defendant's name.

The plaintiff maintains that the defendant admitted at the meeting of creditors that he signed the July 23 agreement. While portions of the defendant's testimony can be read to include such an admission, the court's reading of the entire transcript suggests to it that the defendant was very confused about the agreement, his signature on it, and the plaintiff's involvement in the partnership's business affairs.

Shortly before the commencement of the meeting counsel for the plaintiff served the defendant with a state court action in his capacity as the partnership's agent for service of process. That complaint included a copy of the July 23 agreement. The transcript suggests that counsel and the defendant discussed the agreement before the meeting. Then, with the complaint and the agreement in hand, counsel questioned the defendant on the record:

**Counsel:** . . . What is the nature of the debt owed to Mr. Kenner?

**Powell:** Like I told you, I never dealt with Dave Kenner . . . and he never did directly dealt [sic] with me[.] [I]t was for restaurant equipment and build-out of the commercial kitchen. I guess that's what his debt was for.

. . .

**Counsel:** Was it your understanding of your agreement with Mr. Kenner that he would only be on the lease for six

months?

**Powell:**   It was - I heard the six months.   I did hear
something about the six months.   I'm not - like I said, I
never dealt with Dave regarding his investment.

**Counsel:**   But you do recall signing the agreement?

**Powell:**   I just - I didn't even know I was on there.   I did
see my signature on there.   I never even - like I said, I
never dealt with Dave on any of the equipment or - or his
investment.   He wasn't - he didn't come to me to be part of
the [partnership], so -

**Counsel:**   And now that you've seen the document, it
refreshes your recollection that you signed the document?

**Powell:**   My signature was on there, so that's the only
thing I - I didn't even think I was on there.

The court does not read the foregoing or any other part of
the meeting transcript to be an admission by the defendant that
he signed the agreement.  At most the transcript suggests that
the defendant was confused.   On the one hand, he saw what
appeared to be his signature, but on the other hand, he stated
that "I didn't even think I was on there."   Having just been
handed a document that appeared to have his signature on it, the
defendant was attempting to make some sense of it with a very
limited and distant memory of the transaction.

The court concludes that the defendant did not sign the July
23 agreement.   Despite this conclusion, the plaintiff will
prevail.

Ms. Maina told the plaintiff that she and he would be

-6-

signing the lease.   However, she gave the lessor a version of the lease that included only the plaintiff's signature.   She promised the plaintiff to have the lessor release the plaintiff after the first six months of the lease term.   In fact, the lessor was never approached, whether at the inception of the lease or after expiration of the six-month period, regarding the plaintiff's release.   And, Ms. Maina gave the plaintiff the July 23 agreement representing that it had been signed by all partners.   In fact, it had not been signed by the defendant.

In short, the court is convinced that the plaintiff was deceived so that the partnership could trade on his good credit. This deception was perpetrated by Ms. Maina.   Because the partners were already financially strapped, and because the partnership's business encountered insurmountable problems and never opened for business, the partnership and the partners were unable to pay the lessor.   Ms. Maina's deception ripened into a significant loss for the plaintiff.

While Ms. Maina may have been the bad actor, she was the defendant's partner.   For purposes of dischargeability under section 523(a)(2)(A), the fraud of one partner is imputed to another partner even when that partner is ignorant of the fraud. See Strang v. Bradner, 114 U.S. 555 (1885).   That is, the fraud of the debtor's agent, may be imputed to the debtor.   See In re Cecchini, 780 F.2d 1140 (9th Cir. 1986).[2]

_____

[2] The result would be different if this action implicated subsections (a)(2)(B) or (a)(2)(C) rather than subsection (a)(2)(A) of section 523.   The former sections require the debtor's direct involvement in the fraud.   See 11 U.S.C. § 523(a)(2)(B)(iv) and (C)(i)(II) (making debts nondischargeable when "the debtor caused to be made or published with intent to

-7-

While the defendant may believe he has been victimized by his partner, so was the plaintiff.  As a result, the defendant can be held to answer for any liability the plaintiff may have under the lease.

A separate judgment will be entered for the plaintiff.  The plaintiff shall lodge a proposed form of judgment.

Dated: 9 Aug 2010

By the Court

Michael S. McManus, Judge
United States Bankruptcy Court

---

deceive" a false statement, and when certain extensions of credit under an open-end credit plan "obtained by the debtor" are drawn upon).

**CERTIFICATE OF MAILING**

    I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Sean Gavin
2151 River Plaza Dr #105
Sacramento, CA 95833

Kelvin Powell
1555 Lakeside Dr #26
Oakland, CA 94612

Dated: August 9, 2010

                              *Susan C. Cox*

                      Susan C. Cox
                      Judicial Assistant to Judge McManus